No. 25-30322

# In the United States Court of Appeals for the Fifth Circuit

VOICE OF THE EXPERIENCED, A MEMBERSHIP ORGANIZATION ON BEHALF OF ITSELF AND ITS MEMBERS; MYRON SMITH, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; DAMARIS JACKSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; NATE WALKER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; DARRIUS WILLIAMS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; KEVIAS HICKS; JOSEPH GUILLORY; ALVIN WILLIAMS, *Plaintiffs-Appellees*

v.

JAMES M. LEBLANC, SECRETARY, DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS; TIM HOOPER, WARDEN, LOUISIANA STATE PENITENTIARY; LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, *Defendants-Appellants*

———————————————

On Appeal from the United States District Court
for the Middle District of Louisiana
No. 23-cv-1304, Hon. Brian A. Jackson

———————————————

**APPELLANTS' OPENING BRIEF**

———————————————

*(Counsel listed on inside cover)*

ELIZABETH B. MURRILL
Attorney General of Louisiana

J. BENJAMIN AGUIÑAGA
Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

ii

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required here because, under the fourth sentence of Fifth Circuit Rule 28.2.1, Appellants—as "governmental" parties—need not furnish a certificate of interested persons.

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

i

**STATEMENT REGARDING ORAL ARGUMENT**

The State's pending motion to expedite this appeal, ECF 8, proposes a briefing and argument schedule that will allow the Court to avoid a recurring mootness problem caused by the Prison Litigation Reform Act. As discussed below, however, because reversal is so plainly warranted, the State does not believe that oral argument is necessary. Accordingly, in the interests of an efficient disposition avoiding mootness, the State respectfully submits that oral argument is unnecessary, but stands ready to present argument expeditiously if the Court so requests.

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ...........................................i

STATEMENT REGARDING ORAL ARGUMENT ...................................ii

TABLE OF AUTHORITIES........................................................................v

INTRODUCTION.......................................................................................1

JURISDICTIONAL STATEMENT .............................................................6

ISSUES PRESENTED ................................................................................7

STATEMENT OF THE CASE ....................................................................8

SUMMARY OF ARGUMENT ..................................................................15

LEGAL STANDARD ...............................................................................19

ARGUMENT ............................................................................................19

I.   REVERSAL IS WARRANTED BECAUSE THE MAY 23 ORDER DOES
     NOT CONTAIN THE PLRA-REQUIRED FINDINGS. .............................19

II.  REVERSAL ALSO IS WARRANTED BECAUSE THE MAY 23 ORDER
     MISAPPLIES THE EIGHTH AMENDMENT AND RUNS AFOUL OF THE
     PLRA. ......................................................................................21

     A.   The May 23 Order's Eighth Amendment Analysis Is Wrong...21

     B.   The PLRA Was Intended to Bar This Precise
          Micromanagement of State Prisons. .........................................30

III. CONSIDERATION OF THE REMAINING PRELIMINARY-INJUNCTION
     FACTORS IS UNNECESSARY. ............................................................31

CONCLUSION ........................................................................................32

CERTIFICATE OF SERVICE ................................................................33

CERTIFICATE OF COMPLIANCE ......................................................34

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Hutson*,
114 F.4th 408 (5th Cir. 2024), *reh'g en banc denied*, 132 F.4th 751
(5th Cir. 2025), *pet. for cert. pending*, *Hutson v. United States*, No.
24-1022 (U.S.) ...................................................................................... 1

*Cadena v. El Paso Cnty.*,
946 F.3d 717 (5th Cir. 2020) ...................................................... 4, 22, 24

*Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*,
762 F.2d 464 (5th Cir. 1985) ................................................................ 31

*Farmer v. Brennan*,
511 U.S. 825 (1994) ...................................................................... 21, 25

*Hare v. City of Corinth*,
74 F.3d 633 (5th Cir. 1996) .................................................................. 28

*LaMarca v. Turner*,
995 F.2d 1526 (11th Cir. 1993) ........................................................... 28

*Marlowe v. LeBlanc*,
810 F. App'x 302 (5th Cir. 2020) ......................................................... 32

*Miller v. French*,
530 U.S. 327 (2000) .............................................................................. 19

*Parker v. Hooper*,
128 F.4th 691 (5th Cir. 2025), *reh'g en banc granted and opinion
vacated*, 134 F.4th 867 (5th Cir. 2025) ................................................. 1

*Sampson v. Murray*,
415 U.S. 61 (1974) .................................................................................. 6

*Smith v. Edwards*,
88 F.4th 1119 (5th Cir. 2023) ......................................................... 2, 19

*United States v. Hinds Cnty. Bd. of Supervisors*,
128 F.4th 616 (5th Cir. 2025) .............................................................. 20

*United States v. Klein*,
543 F.3d 206 (5th Cir. 2008) ............................................................... 19

*Valentine v. Collier,*
  956 F.3d 797 (5th Cir. 2020) ........................................................ passim

*Valentine v. Collier,*
  978 F.3d 154 (5th Cir. 2020) ........................................................ 5, 30

*Valentine v. Collier,*
  993 F.3d 270 (5th Cir. 2021) ........................................................ 25

*Villarreal v. Wells Fargo Bank, N.A.,*
  814 F.3d 763 (5th Cir. 2016) ........................................................ 19

*Voice of the Experienced v. LeBlanc,*
  No. 24-30420 (5th Cir.) ........................................................ passim

*Woodford v. Ngo,*
  548 U.S. 81 (2006) ........................................................ 32

*Yates v. Collier,*
  677 F. App'x 915 (5th Cir. 2017) ........................................................ 2

**Statutes**

28 U.S.C. § 1292 ........................................................ 6

28 U.S.C. § 1331 ........................................................ 6

28 U.S.C. § 3626 ........................................................ 2, 20

42 U.S.C. § 1983 ........................................................ 6

## INTRODUCTION

This Court recently has decided a number of Prison Litigation Reform Act (PLRA) appeals that have generated significant disagreement among various members. *See, e.g.*, *Parker v. Hooper*, 128 F.4th 691 (5th Cir. 2025), *reh'g en banc granted and opinion vacated*, 134 F.4th 867 (5th Cir. 2025); *Anderson v. Hutson*, 114 F.4th 408 (5th Cir. 2024), *reh'g en banc denied*, 132 F.4th 751 (5th Cir. 2025), *pet. for cert. pending*, *Hutson v. United States*, No. 24-1022 (U.S.). This, too, is a PLRA appeal—but it is not close: The PLRA prohibits prospective relief absent certain findings, and the district court's order never makes those findings. Indeed, because the errors below are so clear, the Court should summarily reverse in a brief, unpublished per curiam.

This a prison-conditions case concerning the Farm Line at the Louisiana State Penitentiary (LSP). Prisoners assigned to the Farm Line conduct a number of tasks, such as planting and cultivating fruits and vegetables used solely for prisoner consumption. Plaintiffs in this case are prisoners who claim that heat conditions surrounding the Farm Line violate their Eighth Amendment rights.

Almost a year ago, the district court entered a preliminary injunction that the State immediately appealed. *See Voice of the Experienced v. LeBlanc*, No. 24-30420 (5th Cir.) (*VOTE I*). This Court stayed pending appeal three of five mandates in that injunction order. Order, *VOTE I*, ECF 41-1. By operation of law under the PLRA, however, that injunction order expired 90 days after it was issued. *See* 28 U.S.C. § 3626 (a)(2). All parties and the district court agree on this point. Accordingly, the *VOTE I* panel (Oldham, Douglas, Dennis) heard oral argument in April 2025, which focused principally on whether to vacate the *VOTE I* injunction order as this Court has done twice before in materially identical cases. *See Smith v. Edwards*, 88 F.4th 1119 (5th Cir. 2023); *Yates v. Collier*, 677 F. App'x 915 (5th Cir. 2017) (per curiam). That appeal remains pending.

On May 23, 2025, however, the district court entered a new preliminary injunction, requiring LSP officials to (a) "monitor the heat index on the Farm Line at LSP every 30 minutes" (overriding the current policy set at one hour) and (b) "issue a 'Heat Alert' on the Farm Line at LSP whenever the heat index meets or exceeds 88 degrees Fahrenheit" (overriding the current policy set at 91 degrees Fahrenheit). ROA.10230.

2

The State immediately appealed on Saturday, May 24, ROA.10231–32, and filed a motion to expedite (to avoid the mootness issue presented in *VOTE I*) on May 28, ECF 8. The State's motion to expedite commits to filing the State's opening brief today, June 4.

The Court need only address one discrete and fatal issue to summarily reverse the May 23 Order: That Order does not comply with the PLRA. One the PLRA's core prohibitions is that a court "*shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.*" 18 U.S.C. § 3626(a)(1)(A) (emphasis added). The May 23 Order never cites that provision, much less purports to make the necessary findings that could permit injunctive relief. That defect is all the Court need identify to summarily reverse the May 23 Order.

Although the Court need not proceed further—and although the State seeks to streamline this appeal to ensure a quick adjudication—the State adds one argument on the merits: The May 23 Order is a direct affront to the Eighth Amendment and, by extension, the PLRA. Take, for

example, the Order's directive that LSP officials monitor the heat index every 30 minutes. That directive is based on the Order's assessment that monitoring the heat index every two hours "may not adequately protect the health of all workers." ROA.10211. Such "may not" prognostications come nowhere close to "[d]eliberate indifference," which "is an extremely high standard to meet." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 728 (5th Cir. 2020). But that is not the worst of it: The May 23 Order complains about monitoring every two hours while ignoring the Order's separate concession that LSP does not actually monitor every two hours—it "monitor[s] and record[s] outside temperatures *every hour*." ROA.10197 (emphasis added). Even if the district court could articulate deliberate indifference as to a *two*-hour schedule (it cannot), therefore, it did not even try to establish deliberate indifference as to LSP's *one*-hour schedule. And the 30-minute dictate comes out of nowhere, with literally no testimony or evidence about it.

The district court's misapplication of the Eighth Amendment points up the related PLRA problem. Issuing directives to Louisiana prison officials down to "half-hour interval[s]" is a "level of micromanagement ... [that] does not reflect the principles of comity commanded by the PLRA."

4

*Valentine v. Collier*, 956 F.3d 797, 806 (5th Cir. 2020). The May 23 Order quite literally is a matter of degrees (3) and minutes (30)—simply because the district court disagrees with where Louisiana prison officials drew certain lines. But "[t]he Constitution charges federal judges with deciding cases and controversies, not with running state prisons." *Valentine v. Collier*, 978 F.3d 154, 165 (5th Cir. 2020) (citation omitted). The district court's attempted control of LSP's Farm Line—down to the degree and minute—fundamentally violates that principle. The Court should reverse.

## JURISDICTIONAL STATEMENT

The district court has jurisdiction over Plaintiffs' 42 U.S.C. § 1983 action under 28 U.S.C. § 1331. The district court entered the May 23 Order—framed as a "Second Temporary Restraining Order"—at issue in this appeal on May 23, 2025. ROA.10230. The State filed a notice of appeal on Saturday, May 24. ROA.10231–32.

This Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1) for the same reasons this Court identified as to the "first temporary restraining order" in *VOTE I*. Specifically, although "[t]he district court labeled its order as a temporary restraining order" and although this Court "[o]rdinarily ... lack[s] jurisdiction to review a TRO," the May 23 Order "has the practical effect of an injunction." Order at 3, *VOTE I*, ECF 41-1. Indeed, "[i]t includes no expiration date, instead providing indefinite relief." *Id.* And "the district court held a hearing at which the State strongly contested the need for injunctive relief." *Id.* (citing *Sampson v. Murray*, 415 U.S. 61, 87 (1974)). The Court "therefore ha[s] jurisdiction." *Id.*

## ISSUES PRESENTED

1.    Whether the Court should reverse the May 23 Order for failure to make the findings required by 28 U.S.C. § 3626(a)(1)(A).

2.    Whether the Court should reverse the May 23 Order for failure to comply with the Eighth Amendment and the PLRA's prohibition against micromanagement of state prisons.

## STATEMENT OF THE CASE

Plaintiffs in this lawsuit are LSP prisoners who claim that conditions at LSP—specifically heat conditions on the Farm Line—violate the Eighth Amendment. The Farm Line comprises a number of prison crews who perform work at LSP. Some of that work involves grass-cutting, while other tasks involve the planting and harvesting of thousands of fruits and vegetables that feed LSP prisoners, as well as other forms of labor. ROA.9340–41.

**1.** Much has happened since Plaintiffs filed their lawsuit over a year ago. In particular, the district court entered a preliminary injunction in July 2024 and a subsequent order in August 2024 requiring LSP to undertake various measures to protect prisoners on the Farm Line from heat risks. This Court partially stayed that injunction. Order, *VOTE I*, ECF 41-1. In addition, as the State has explained in its pending motion to expedite, the injunction expired by operation of law after 90 days under the PLRA. *See* ECF 8. Nonetheless, in response to Plaintiffs' allegations and the district court's directives, LSP has undertaken a wide range of steps designed to thwart any perceived heat risks.

Among other steps, LSP has adopted a blanket policy—*i.e.*, without regard to weather or any issuance of Heat Alerts—requiring the following measures: (1) 15-minute rest periods every 45 minutes; (2) the ability to take breaks as needed; (3) access to shade, ice, and water, and cups for water; (4) access to sunscreen; and (5) access to appropriate clothing, gloves, and boots. ROA.8510–11. LSP also built shade wagons that can follow workers in a field (ROA.6175; ROA.8253–73):



And LSP is now constructing shade pavilions by work fields that enjoy benches, electricity, fans, and water spigots (ROA.9383; ROA.9373):

9



These physical steps are only the tip of the iceberg—for LSP and the Department of Public Safety and Corrections also have overhauled policies related to how they monitor for heat risks and accommodate prisoners with particular medical needs. To accomplish these changes, the State hired medical experts to assist in revising its policies. For example, the State hired Dr. Deleca Barnes—the only Doctor of Pharmacy in this case—to revise and expand the Department's Heat Pathology Medication list. *See* ROA.9343. Similarly, the State hired Dr. Carl Keldie—a physician focused on heat at correctional institutions—to advise on revisions to Health Care Policy No. 8 (HCP8), a Department of Corrections-wide policy, ROA10195. ROA.9519–34. And in light of this process, LSP updated its own relevant directive—LSP Directive 13.067—to reflect the Department-wide changes as well as LSP's own efforts to control heat risks. ROA.9373.

**2.** None of this is enough for Plaintiffs. On March 26, 2025, they filed another motion for "a second temporary restraining order and preliminary injunction." ROA.7283. Plaintiffs' various claims are wide-ranging, but the May 23 Order now on appeal addressed only two such claims. Here are the facts relevant to those claims.

*First*, Plaintiffs demanded an injunction requiring LSP officials "to monitor the heat index every 30 minutes." ROA.10193. As the district court acknowledged, a Department-wide policy (HCP8) "directs DOC to monitor the outside temperature *every two hours*." ROA.10196 (emphasis added). But LSP's own amended policy (LSP Directive 13.067) is more protective: "The 2025 Directive No. 13.067 further directs LSP to monitor and record outside temperatures *every hour*." ROA.10197 (emphasis added); *accord* ROA.9378. Accordingly, Plaintiffs' position is that the Eighth Amendment requires LSP to check the heat index every *half hour* rather than every *hour*.

*Second*, Plaintiffs demanded an injunction requiring LSP officials "to issue a "Heat Alert' whenever the heat index meets or exceeds 88 degrees Fahrenheit." ROA.10193. (The issuance of a Heat Alert has no practical effect on average prisoners because they already enjoy the

11

protective measures technically triggered by a Heat Alert; only those prisoners with special precautionary statuses may be transported indoors upon issuance of a Heat Alert. *See* ROA.9378 (water, ice, 15-minute breaks); ROA.9386–87.) As the district court acknowledged, both Department policy and LSP policy currently require a Heat Alert when the heat index exceeds 91 degrees Fahrenheit. ROA.10195–96. Accordingly, Plaintiffs' position is that LSP is violating the Eighth Amendment by not issuing Heat Alerts at three degrees lower than what the current policy provides.

The historical context surrounding the Heat Alert threshold is important here. As the district court observed, LSP previously used a threshold of 88 degrees Fahrenheit. ROA.10196–97. Following the State's agency-wide—and LSP-wide—revision of policies and implementation of new protective measures, both the Department and LSP amended the Heat Alert threshold to reflect the current threshold of 91 degrees Fahrenheit. *Id.* No doubt prompted by Plaintiffs' own distortions, the district court's May 23 Order suggests that this was a malicious act of backsliding in light of the court's prior (and expired) injunction. *See* ROA.10225 ("Defendants chose to increase the Heat Alert threshold from

88 to 91 degrees Fahrenheit *after* the Court ordered Defendants to improve conditions on the Farm Line to preserve human health and safety."). To be clear, the district court's expired injunction did not purport to bind the State to any particular Heat Alert threshold—in fact, in the district court's own words, it "did not address" the constitutionality of any threshold. ROA.10208. But more importantly, the State respectfully—but firmly—rejects any suggestion of malicious intent. Given the sweeping measures the State has recently implemented, it made the decision (based on advice from medical professionals) to amend the Heat Alert threshold to reflect the updated policies and measures.[1] Any suggestion otherwise is baseless, just as are claims that the Farm Line "serv[es] an almost purely penological function" (ROA.10194) and is "similar[] to chattel slavery" (ROA.10194–95).

**3.** On May 23, 2025, the district court granted Plaintiffs' request for injunctive relief in these two respects. *First*, on the monitoring timeline,

---

[1] *See, e.g.*, ROA.9526 (Dr. Keldie stating: "[T]here is little or no risk to field workers at LSP who have been acclimated to the environment, have access to risk mitigation measures including shade, iced water and Gatorade and rest periods of 15 minutes every 45 minutes and who perform easy level work the majority of the time with occasional moderate level workload."); ROA.9530 (Dr. Keldie noting that "[o]ur subject facility (LSP) has multiple sound heat illness mitigations in effect" and listing such mitigations).

the court credited Plaintiffs' expert's testimony that "monitoring the heat index only every two hours may not adequately protect the health of all workers on the Farm Line, particularly those who are heat sensitive." ROA.10210. (Note that the district court ignored that LSP actually monitors the heat index every hour.) Then, citing no evidence about shorter periods of monitoring (such as an hour or a half hour), the court summarily announced that it would "require Defendants to monitor the heat index every 30 minutes on the Farm Line at LSP." ROA.10212.

*Second*, the court determined that issuing a Heat Alert at 91 degrees, rather than 88 degrees, violates the Eighth Amendment. The sum total of the court's deliberate-indifference analysis is quotations of its expired injunction order: "[T]he Court's July 2 Order made clear the risks present when the heat index exceeds 88 degrees Fahrenheit," the court said, block-quoting its recitation of Plaintiffs' expert's views from the factual background section of its expired injunction order. ROA.10225–26.

To be clear, not only did the expired injunction not purport to bind the State to any Heat Alert threshold or address the constitutional issue, but the district court's expired injunction order also expressly *rejected*

14

Plaintiffs' request to enjoin work on the Farm Line "whenever the heat index is at or above eighty-eight degrees Fahrenheit." ROA.3151. Indeed, the expired injunction order emphasized that "agricultural labor does not cease across the South when heat index values reach eighty-eight degrees Fahrenheit." ROA.3152. And the expired injunction order *rejected* the idea that "there were no remedies sufficient to reduce the risks of agricultural laborers developing heat-related maladies." *Id.*

Nonetheless, the May 23 Order requires the State to "issue a 'Heat Alert' on the Farm Line at LSP whenever the heat index meets or exceeds 88 degrees Fahrenheit." ROA.10230.

**4.** The State immediately appealed the May 23 Order. ROA.10231–32. The State also filed a motion to expedite this appeal, which remains pending. ECF 8. As the State there explains, the PLRA has an automatic-termination provision that presents a potential mootness issue—and so, as this Court has emphasized in prior cases, an expedited appeal is the way to avoid that mootness issue.

## SUMMARY OF ARGUMENT

**I.** Summary reversal is warranted on one straightforward ground: The May 23 Order violates the PLRA. The PLRA prohibits a federal court

from issuing prospective relief absent certain specified findings. *See* 18 U.S.C. § 3626(a)(1)(A). The May 23 Order never so much as cites that prohibition, let alone purports to make the required findings. Accordingly, the Court need to do more than reverse on this basis.

**II.** Although the Court need not proceed further, the May 23 Order commits Eighth Amendment and PLRA errors that independently warrant reversal.

**A.** On the Eighth Amendment front, the district court fundamentally misconstrued the facts and the law.

Start with the district court's directive that LSP check the heat index every half hour. That directive is based on the district court's concern that checking the heat index every *two hours* "may not" adequately protect prisoners. But LSP checks the heat index every *hour*, not every *two hours*—and the district court identified no alleged constitutional problem with a one-hour schedule. Moreover, even if LSP followed a two-hour schedule, the district court's concern about whether that schedule "may not" be "adequate" comes nowhere close to establishing subjective deliberate indifference, *i.e.*, that LSP is effectively acting with criminal recklessness. And finally, the 30-minutes dictate?

16

Invented out of whole cloth. The district court cited no evidence or supporting authority suggesting that the Eighth Amendment actually requires LSP to check the heat index every 30 minutes. This is Eighth Amendment analysis gone awry.

The same goes for the district court's dictate that LSP issue a Heat Alert at 88 degrees Fahrenheit rather than 91 degrees Fahrenheit. The only cited basis for the State's supposed deliberate indifference is that the district court's expired injunction from last year said that heat risks increase when the temperature exceeds 88 degrees Fahrenheit. Disregard that the expired injunction "did not address" (the district court's own words) a Heat Alert threshold or what the Eighth Amendment requires (if anything). Disregard also that the expired injunction expressly ensured that LSP could constitutionally operate the Farm Line at temperatures that exceed 88 degrees Fahrenheit with sufficient protective measures in place. And disregard that the State enacted such sweeping measures following the district court's expired order, including protective measures that complement the amended Heat Alert threshold. As both a factual and legal matter, the district court cannot gerrymander the Heat Alert issue out of this story and deem it

17

unconstitutional. Rather, a proper Eighth Amendment analysis assesses the full nature of a defendant's response to claimed constitutional violations—and here, there can be no dispute that the State's holistic measures improving Farm Line conditions comes nowhere close to criminal recklessness.

**B.** If the State sounds frustrated, that is because it is—for the PLRA was intended to prohibit this sort of micromanagement of state prisons by federal courts. This Court has been emphatic that judges are not policymakers or prison wardens. Yet, by seeking to regulate LSP down to the very degree and minute of its policies, the district court in this case is directly contradicting this Court's longstanding precedents. Reversal is thus warranted to restore the guardrails Congress imposed in the PLRA and the limits reflected in the Eighth Amendment itself.

**III.** Because the May 23 Order is both unlawful under the PLRA and wrong on the merits, that pretermits any need to address the preliminary-injunction equitable factors. It bears noting, however, that the State prevails on the equities under this Court's many cases recognizing the affront to federalism and prison administration posed by district courts that seek to manage state prison operations. That is

18

precisely what is happening in this case and others like it as Louisiana receives injunction after injunction aimed at installing federal courts as overseers of Louisiana prisons. That is wrong.

## LEGAL STANDARD

This Court "review[s] a district court's grant of a preliminary injunction under an abuse-of-discretion standard." *Smith*, 88 F.4th at 1124. "The failure to follow an applicable statute is always an abuse of discretion." *United States v. Klein*, 543 F.3d 206, 215 (5th Cir. 2008). Similarly, "[a] district court abuses its discretion if it (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016) (citation omitted).

## ARGUMENT

### I.    REVERSAL IS WARRANTED BECAUSE THE MAY 23 ORDER DOES NOT CONTAIN THE PLRA-REQUIRED FINDINGS.

The Court need do no more than reverse the May 23 Order as a clear violation of the PLRA. "[C]urbing the equitable discretion of district courts was one of the PLRA's principal objectives." *Miller v. French*, 530 U.S. 327, 330 (2000). To that end, the PLRA expressly bars a court from entering injunctive relief absent certain findings. Specifically, a court

19

"*shall not* grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A) (emphasis added). This Court recently has described these required findings as imposing "strict limits on federal courts' ability to fashion civil prospective relief" in prison cases. *United States v. Hinds Cnty. Bd. of Supervisors*, 128 F.4th 616, 625 (5th Cir. 2025).

The May 23 Order squarely violates the PLRA by entering injunctive relief without the required findings. The May 23 Order never so much as cites § 3626(a)(1)(A), much less purports to make the findings required by § 3626(a)(1)(A). *See generally* ROA.10193–230. And yet the May 23 Order "grant[s]" Plaintiffs' request for prospective relief, "order[ing]" that (a) "Defendants shall monitor the heat index on the Farm Line at LSP every 30 minutes," and (b) "Defendants shall issue a "Heat Alert' on the Farm Line at LSP whenever the heat index meets or exceeds 88 degrees Fahrenheit." ROA.10230 (capitalization and bolding altered). The PLRA squarely prohibits this grant of prospective relief absent the PLRA-required findings.

20

This fatal defect is straightforward. Reversal requires no more ink than the above.

## II. REVERSAL ALSO IS WARRANTED BECAUSE THE MAY 23 ORDER MISAPPLIES THE EIGHTH AMENDMENT AND RUNS AFOUL OF THE PLRA.

Although the Court need not proceed further to summarily reverse the May 23 Order, it bears noting that summary reversal is additionally warranted on the merits. In particular, the May 23 Order fundamentally misapprehends the Eighth Amendment analysis, and in doing so, engages in the precise sort of micromanagement of state prisons that the PLRA was designed to prohibit.

### A. The May 23 Order's Eighth Amendment Analysis Is Wrong.

Start with basic Eighth Amendment principles. "In a constitutional claim alleging deliberate indifference to the conditions of a prisoner's confinement, the plaintiff must satisfy both the 'subjective and objective requirements' of the Eighth Amendment inquiry." *Valentine*, 956 F.3d at 801 (quoting *Farmer v. Brennan*, 511 U.S. 825, 846 (1994)). "To satisfy the objective requirement, the plaintiff must show an 'objectively intolerable risk of harm.'" *Id.* (quoting *Farmer*, 511 U.S. at 846). "To satisfy the subjective requirement, the plaintiff must show that the

21

defendant: (1) was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; (2) subjectively drew the inference that the risk existed; and (3) disregarded the risk." *Id.* (cleaned up). "Deliberate indifference is an extremely high standard to meet." *Cadena*, 946 F.3d at 728.

The May 23 Order purports to find this "extremely high standard" met in two respects: (1) checking the heat index every two hours is unconstitutional, and so LSP officials must now check it every 30 minutes; and (2) issuing a Heat Alert at 91 degrees Fahrenheit is unconstitutional, and so LSP officials must now issue a Heat Alert at 88 degrees Fahrenheit. Both conclusions are wrong.

**1.** Beginning with how frequently the Eighth Amendment allegedly requires LSP officials to check the heat index, it is important to highlight the incoherence in the May 23 Order. That Order repeatedly complains about how checking the heat index "every two hours may not adequately protect the health of all workers on the Farm Line." ROA.10211; *see id.* (emphasizing potential temperature increases "within a two-hour period"); ROA.10215 ("Dr. Vassallo also opined that monitoring the heat index only every two hours may not adequately protect the health of all

workers on the Farm Line, particularly those who are heat sensitive."); ROA.10216 ("Defendants are aware of the significant increases in heat indices over two hours near the Farm Line at LSP."); ROA.10226 ("DOC is well aware of the significant temperature swings that may occur within a two-hour period near LSP."); ROA.10227 ("a 2-hour window" and "a two-hour period"). Based on those statements, the district court summarily announced that it would "require Defendants to monitor the heat index every 30 minutes on the Farm Line at LSP." ROA.10206; ROA.10230.

There are three egregiously wrong aspects of this analysis. *First*, the district court's frontal assault on checking the heat index every *two hours* is a straw man. As the district court elsewhere acknowledged, *LSP's own policy* requires LSP officials to check the heat index every *hour*. ROA.10197 ("The 2025 Directive No. 13.067 further directs LSP to monitor and record outside temperatures every hour."). Any supposed constitutional problems with checking the heat index every *two hours* are thus irrelevant to the actual facts and policy at LSP.[2] And because the

---

[2] Besides ignoring LSP's one-hour policy, the district court cited no evidence suggesting that LSP does not adhere to its one-hour policy. Moreover, the district court expressly acknowledged that the *Pennhurst* doctrine bars the court "from

district court's "every 30 minutes" dictate stems from alleged concerns about a two-hour window—which does not exist at LSP—that dictate is effectively baseless.

*Second*, even as to the supposed "two-hour window," the district court's May 23 Order comes nowhere close to meeting the Eighth Amendment's "extremely high" deliberate-indifference standard. *Cadena*, 946 F.3d at 728.

For one thing, both the district court—and the underlying expert that the court cited—expressly equivocated on any potential risk from checking the heat index every two hours. *See* ROA.10211 ("every two hours *may* not adequately protect the health of all workers on the Farm Line" (emphasis added)); *see* ROA.10215 ("Dr. Vassallo also opined that monitoring the heat index only every two hours *may* not adequately protect the health of all workers on the Farm Line, particularly those who are heat sensitive." (emphasis added)). Besides failing to explain the nature of any such alleged risk, that equivocation is worlds away from

---

enjoining the state to follow its own laws and procedures." ROA.10205–06 (quoting *Valentine*, 956 F.3d at 802).

satisfying a plaintiff's burden to "show an 'objectively intolerable risk of harm.'" *Valentine*, 956 F.3d at 801 (quoting *Farmer*, 511 U.S. at 846).

For another thing, the district court cited no evidentiary basis to suggest that the defendant State officials "subjectively believe the measures they are taking are inadequate," *Valentine*, 956 F.3d at 802, or, put otherwise, that (supposedly) checking the heat index every two hours "show[s] [] a wanton disregard for the prisoners' safety or recklessness," *Valentine v. Collier*, 993 F.3d 270, 281 (5th Cir. 2021). If even the district court and its preferred expert believe that a two-hour window only "may" create some unspecified risk, that is effectively a concession that there is no subjective deliberate indifference here. *Cf. Valentine*, 956 F.3d at 802 ("[D]eliberate indifference requires the defendant to have a subjective state of mind more blameworthy than negligence, akin to criminal recklessness."). So even on the May 23 Order's own mistaken view, there is no Eighth Amendment violation.

*Third*, the district court's "require[ment] [that] Defendants [] monitor the heat index every 30 minutes on the Farm Line at LSP" comes out of nowhere. ROA.10206; ROA.10230. The district court did not trace it to any evidence or testimony. Instead, it appears that the only source

25

of the 30-minute dictate is Plaintiffs' own insistence that this is what the Eighth Amendment requires. *See* ROA.10206 ("Plaintiffs ask the Court to enter a TRO immediately requiring Defendants ... to monitor the heat index every 30 minutes."). That freewheeling approach to controlling state prisons would be wrong as to any two-hour window that concerned the district court—but it is especially wrong here since the district court never confronted LSP's actual *one*-hour practice, let alone explained how the Eighth Amendment requires a check every *half hour* rather than every *hour*. "Although the district court might do things differently, mere 'disagreement' with [LSP's] decisions does not establish deliberate indifference." *Valentine*, 956 F.3d at 803.

**2.** The May 23 Order's dictate that LSP issue a Heat Alert at 88 degrees Fahrenheit, rather than 91 degrees Fahrenheit, is likewise egregiously wrong. Here, the most glaring error is the district court's subjective deliberate indifference finding. As recounted above, the district court said that "deliberate indifference is demonstrated straightforwardly" (ROA.10226) based solely on the fact that the court's expired 2024 injunction reproduced, in its background section, Plaintiffs' expert's view that heat risks increase when the temperature exceeds 88

26

degrees Fahrenheit. The district court thus criticized the State for choosing "to increase the Heat Alert threshold from 88 to 91 degrees Fahrenheit *after* the Court ordered Defendants to improve conditions on the Farm Line to preserve human health and safety." ROA.10225. With all due respect, there are at least three reasons why this Eighth Amendment analysis is completely wrong.

*First*, the expired injunction says exactly nothing about a Heat Alert threshold—much less takes a position on what the Constitution requires (if anything) about Heat Alert thresholds. To quote background-section language back to the State as supposed evidence that the State is now operating in a state of criminal recklessness, *see Valentine*, 956 F.3d at 802, is deeply unfair and misplaced.

*Second*, the expired injunction order itself—which predated the extensive measures and policy revisions that the Department and LSP have undertaken—*contemplated* that LSP may constitutionally operate the Farm Line at heat indices above 88 degrees with sufficient protective measures in place. That was the whole point of the district court *rejecting* Plaintiffs' request for an injunction against work on the Farm Line "whenever the heat index is at or above eighty-eight degrees Fahrenheit."

27

ROA.3151. "[A]gricultural labor does not cease across the South when heat index values reach eighty-eight degrees Fahrenheit," the district court promised. ROA.3152. For the district court to now announce that—regardless of the measures the State has undertaken after that order—the Constitution requires a Heat Alert at 88 degrees Fahrenheit thus yanks the rug out from under the State. Adding insult to injury, moreover, is the accusation that the State is subjectively and deliberately indifferent to the health of the very prisoners for whom all these measures have been installed.

*Third*, and perhaps most important, these commonsense problems point up the district court's fundamental misapprehension about how the Eighth Amendment analysis works in a case like this—where a defendant is actively responding to alleged constitutional problems. In such cases, the subjective component of the deliberate-indifference inquiry must be "satisfied [] in respect to the response itself." *Hare v. City of Corinth*, 74 F.3d 633, 649 n.5 (5th Cir. 1996); s*ee also LaMarca v. Turner*, 995 F.2d 1526, 1536 (11th Cir. 1993) ("[I]f an official attempts to remedy a constitutionally deficient prison condition, but fails in that endeavor, he cannot be deliberately indifferent unless he knows of, but

disregards, an appropriate and sufficient alternative."). Here, the State's amendment of the Heat Alert threshold did not occur in a vacuum—it occurred alongside the construction of shade wagons and pavilions, the revision and expansion of a medications list, the revision and expansion of heat policies themselves, and the imposition of protective measures *regardless of the weather*: (1) 15 minute rest periods every 45 minutes; (2) the ability to take breaks as needed; (3) access to shade, ice, and water, and cups for water; (4) access to sunscreen; and (5) access to appropriate clothing, gloves, and boots. ROA.8510–11.

By gerrymandering the Heat Alert threshold amendment out of that sweeping effort and deeming it unconstitutional, the district court fundamentally misapprehended the proper Eighth Amendment analysis. The district court was instead required to assess the reasonableness of the collective response itself. So considered, amending the Heat Alert threshold itself does not reflect subjective deliberate indifference because—as the State's medical professionals advised the State—"there is little or no risk" to prisoners who have access to the new protective measures. ROA.9526; *accord* ROA.9530. Put otherwise, the district court cited no evidence suggesting that the State operated with criminal

29

recklessness in amending the Heat Alert threshold alongside each of the other myriad policy changes that have occurred over the past year.

### B.  The PLRA Was Intended to Bar This Precise Micromanagement of State Prisons.

If the State sounds frustrated, that is because it is. It is remarkable that, some 30 years after the PLRA was enacted, we are litigating a district court's attempt to alter prison operations in matters of (3) degrees and (30) minutes. If this Court has been clear about anything, it is that "federal judges are not policymakers." *Valentine*, 978 F.3d at 165. "The Constitution charges federal judges with deciding cases and controversies, not with running state prisons." *Id.* (citation omitted). The PLRA breathed life into that principle by "command[ing]" "comity"— getting federal judges out of the business of "micromanagement [of state prisons], enforced upon threat of contempt." *Valentine*, 956 F.3d at 806. Especially those sorts of intrusions into state prisons that are drawn "down to the half-hour interval." *Id.*

Put simply, the judiciary's "conscribed role is not to assess whether prison officials could have done more"—"[n]or is it to micromanage prison operations." *Valentine*, 978 F.3d at 158. Instead, its "limited role is [] to determine whether [LSP] has ... satisfied the constitutionally required

30

minimum." *Id.* And this is the kicker: "[W]e must do so within strict procedural bounds mandated by Congress. We are forbidden to do more." *Id.* The May 23 Order directly flouts these basic principles.

## III. CONSIDERATION OF THE REMAINING PRELIMINARY-INJUNCTION FACTORS IS UNNECESSARY.

The district court's failure to supply the PLRA-required findings, *supra* Section I, and the court's merits errors, *supra* Section II, mean that the May 23 Order cannot stand. *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) ("[I]f the movant does not succeed in carrying its burden on any one of the four prerequisites, a preliminary injunction may not issue and, if issued, will be vacated on appeal."). Accordingly, the district court's discussion of the equities factors—which relied, in turn, on the underlying erroneous merits analysis—is beside the point. *See* ROA.10228 ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." (cleaned up)); ROA.10229 ("[T]he public interest supports the protection of Eighth Amendment rights." (citation omitted)).

It bears mentioning, however, that the State plainly prevails in any equities analysis, as this Court recognized at the stay stage in *VOTE I*.

31

"[I]t is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." Order at 9–10, *VOTE I*, ECF 41-1 (quoting *Woodford v. Ngo*, 548 U.S. 81, 94 (2006)). "The Louisiana Legislature assigned the prerogatives of prison policy to DPSC." *Id.* at 10 (quoting *Marlowe v. LeBlanc*, 810 F. App'x 302, 306 (5th Cir. 2020)). "The district court's order therefore 'prevents the State from effectuating the Legislature's choice and hence imposes irreparable injury.'" *Id.* (quoting *Valentine*, 956 F.3d at 803).

## CONCLUSION

The Court should summarily reverse the May 23 Order.

Respectfully submitted,

Dated:   June 4, 2025

ELIZABETH B. MURRILL
Attorney General of Louisiana

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA
Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

32

## CERTIFICATE OF SERVICE

I certify that on June 4, 2025, I filed the foregoing brief with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all counsel of record.

/s/ *J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this motion complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7) because it contains 5,937 words; and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016 (the same program used to calculate the word count).

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

Dated:    June 4, 2025