PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

535 Mission Street, 25th Floor
San Francisco, CA 94105
+1 628 432 5100

**Anna Stapleton**
**Direct Dial:** +1 628 432 5188
**Email:** astapleton@paulweiss.com

New York
Brussels
Hong Kong
London
Los Angeles
Tokyo
Toronto
Washington, D.C.
Wilmington

July 11, 2025

**VIA ELECTRONIC FILING**
Lyle W. Cayce
Clerk of Court
U.S. Court of Appeals for the Fifth Circuit
F. Edward Hebert Building
600 S. Maestri Place
New Orleans, LA 70130

  Re: *Voice of the Experienced v. LeBlanc*, No. 25-30322

Dear Mr. Cayce:

  On July 9, 2025, the Court directed the parties to file supplemental letter briefs identifying any overlap between the issues presented in this appeal and in No. 24-30420, *VOTE* v. *Westcott*. *See* ECF No. 65.

  Plaintiffs-Appellees respectfully submit that while some of the basic facts and underlying legal claims are the same, the two injunctions were issued nearly a year apart, enjoin wholly different state conduct, and turn on distinct substantive and procedural questions. The first appeal—No. 24-30420—primarily concerns whether this Court should vacate an expired injunction. In contrast, the instant appeal—No. 25-30322—addresses the merits of an entirely different injunction issued following the expiration of the first injunction and the Defendants-Appellants' subsequent implementation of new policies and procedures.

  I.  **Factual and procedural background.**

  This case challenges the State of Louisiana's practice of requiring men incarcerated at the Louisiana State Penitentiary (LSP) to perform agricultural labor on the "Farm Line." While conditions on the Farm Line are unconstitutional year-round, they are especially dangerous during periods of extreme heat. Heat indices in LSP's fields regularly exceed 88 degrees Fahrenheit, the threshold widely accepted by medical experts and governmental entities as posing significant risks to human health and safety. Appellants' policies and procedures for protecting men on the Farm Line in such dangerous conditions are inadequate. At the core of those policies are "Heat Alerts"—notices of extreme heat that LSP issues when the heat index meets or exceeds a designated temperature. The issuance of a Heat Alert triggers the implementation of a defined set of protective

measures, including special protections for individuals with certain medical conditions or prescribed certain medications, requirements for regular rest periods, and the provision of water and ice. Until recently, the designated temperature for triggering a Heat Alert under Appellants' own policy was set at 88 degrees Fahrenheit.

In September 2023, Appellees—eight men incarcerated at LSP and Voice of the Experienced, a nonprofit membership group comprising currently and formerly incarcerated people—filed suit to challenge Appellants' operation of the Farm Line under the Eighth Amendment, Title II of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act.

In anticipation of the 2024 summer heat, Appellees sought a preliminary injunction barring Appellants from operating the Farm Line whenever the heat index reached or exceeded 88 degrees. On July 2, 2024, the district court granted a partial injunction. The district court found that that Appellees had demonstrated a substantial likelihood of success on the merits that the conditions on the Farm Line during periods of extreme heat violate the Eighth Amendment due to the substantial risk of serious harm and Appellants' deliberate indifference to that risk. Rather than enjoining operation of the Farm Line altogether, the court ordered Appellants to adopt certain measures to reduce the risk of heat-related illness to incarcerated men working in the fields. These included providing sunscreen, drinking water, longer and more frequent breaks, and shade.

On the same day, Appellants noticed an appeal from that order and sought a stay of that injunction pending appeal. A motions panel of this Court issued a partial stay on July 12, 2024. On September 30, 2024, the 2024 injunction expired in accordance with the 90-day limit for prospective relief imposed by the Prison Litigation Reform Act. *See* 18 U.S.C. § 3626(a)(2).[1] On April 30, 2025, this Court heard oral argument. No decision has yet issued.

Following expiration of the 2024 injunction, Appellants implemented some changes, in an apparent attempt to remediate the unconstitutional conditions identified. Appellants voluntarily altered their heat pathology policies, for example, to require that once a Heat Alert is called, rest breaks be taken in shaded areas and that sunscreen be made available. Among those changes, however, Appellants also *raised* the threshold at which a Heat Alert is called from 88 degrees to 91 degrees Fahrenheit.

In March, 2025, facing another heat season, a new Heat Alert policy that was even less protective than it was at the outset of the litigation, and no prospect for permanent relief, Appellees again sought temporary injunctive relief. On May 23, 2025, the district court granted in full the injunction that is the subject of the present appeal. After considering extensive expert testimony, the district court determined that Appellants' decision to raise the Heat Alert threshold

---

[1] Throughout these developments, Appellees had anticipated the opportunity to fully litigate their claims in the bench trial set by the district court for September 30, 2024, which was subsequently rescheduled for November 18, 2024, and eventually April 21, 2025. In February 2025, the district court adjourned that trial without a new date.

demonstrated its ongoing deliberate indifference to the substantial risk of serious harm to incarcerated individuals from excessive heat exposure. ROA.10226. To remedy that harm, the injunction required Appellants to (i) return the Heat Alert threshold to 88 degrees, as was Appellants' policy for years, and (ii) monitor the heat index every 30 minutes, given Appellants' awareness that significant heat index increases can occur in relatively short intervals. ROA.10230. This appeal followed.

II. **The two appeals arise from a common factual core but present separate legal issues.**

At bottom, both injunctions were designed to protect men assigned to the Farm Line from the effects of excessive heat. Nevertheless, the issues presented by the two appeals do not overlap. The specific policies and practices targeted by each injunction differ significantly, as do the forms of relief granted. And the two appeals reached this Court in different procedural postures. As a result, the legal questions presented by the two appeals are completely independent of each other.

First, the two injunctions represent separate exercises of judicial power. As explained above, the 2024 injunction expired by operation of the PLRA. That expiration preceded the district court's issuance of the 2025 injunction by nearly eight months. And the 2025 injunction does not purport to extend, reinstate, or reissue the 2024 injunction. To the contrary, the order granting the 2025 injunction explicitly concluded that, because the new injunction represented a new and independent exercise of the district court's equitable powers, the pendency of the appeal from the 2024 injunction did not impact the district court's ability to issue new relief. ROA.10208–09.

Second, the two injunctions differ in the specific Eighth Amendment violations identified and the remedies required to correct those violations. The 2024 injunction broadly assessed the Appellants' practices and policies with respect to men assigned to work the Farm Line during periods of extreme heat and found those practices and policies to be inadequate. The relief ordered accordingly required Appellants to update their policies to provide for more shade and rest, provide additional protective equipment, update the list of medications known to inhibit thermoregulation and ensure that individuals are evaluated for heat sensitivity, and develop an additional policy to provide protection when heat indices meet or exceed 113 degrees Fahrenheit. Ruling and Ord. at 77, *VOTE* v. *Leblanc*, No. 3:23-cv-01304 (M.D. La. July 2, 2024), ECF No. 70. In contrast, the 2025 injunction narrowly targeted Appellants' subsequent policy change raising the threshold for triggering a Heat Alert from 88 degrees Fahrenheit to 91 degrees Fahrenheit—a change that entirely post-dates the 2024 injunction. *See* ROA.10208–09 ("Because the issue currently before this Court addresses the *current* Heat Alert threshold, which Defendants implemented after the July 2 Order, and the frequency of heat index monitoring . . ., the Court cannot conclude that the relief sought here is identical to the relief Plaintiffs previously sought.").

Finally, and perhaps most importantly, the issues to be decided in each appeal are, by dint of both the specific relief issued and the differing procedural postures of the two appeals, entirely different. As explained, the 2024 injunction had expired before this Court had the opportunity to review that injunction on appeal. Accordingly, the issues presented in the briefing and oral argument in that matter were limited to whether that expiration rendered the appeal moot, such

that this Court lacked Article III jurisdiction to review the merits of that injunction; and whether the expired injunction should be vacated. In contrast, the 2025 injunction remains extant and will not expire until August 21, 2025. The issues addressed in the briefing in this appeal therefore go to the merits of the current injunction: whether the district court adequately applied the PLRA's requirements that injunctive relief be narrowly drawn, necessary to remedy the identified harm, and no more intrusive than required; and whether the district court otherwise abused its discretion in exercising its equitable powers to grant injunctive relief. Those issues do not overlap in any way with the questions of mootness and vacatur presented in the first appeal. And even if the panel considering the 2024 injunction were to reach the merits of that order, the issues would not overlap because the harms identified and relief ordered in the 2024 injunction are separate from the harms identified and relief ordered in the 2025 injunction.

In a letter submitted to the panel adjudicating the appeal from the 2024 injunction, Appellants suggested that the 2025 injunction improperly relied on the 2024 injunction despite the latter's expiration. Supp. Auth. at 2, *Vote* v. *Leblanc*, No. 24-30420 (5th Cir. May 28, 2025), ECF No. 117. Not so. As Appellees explained in their response to that letter, Resp. at 1, *Vote* v. *Leblanc*, No, 24-30420 (5th Cir. June 2, 2025), ECF No. 119, the deliberate indifference analysis undertaken in the 2025 injunction took into account the reality that, in the course of litigating the 2024 injunction, Appellants became aware of evidence that demonstrated "the risks present when the heat index exceeds 88 degrees Fahrenheit," ROA.10225. Accordingly, as the district court observed, Appellants cannot claim ignorance of those risks. But that reality does not render the two injunctions (or appeals thereof) legally intertwined.

In sum, although the two appeals in question arise from a common core of unconstitutional activity and circumstances, the issues presented for this Court's consideration in each appeal do not overlap. The pendency of this Court's decision as to the appeal of the 2024 injunction thus poses no obstacle to this Court's timely review of the 2025 injunction in the present appeal.

Respectfully submitted,

*/s/ Anna M. Stapleton*
Anna M. Stapleton

cc:   Counsel of record (via electronic filing)

Word Count:   1646