No. 25-30322

# In the United States Court of Appeals for the Fifth Circuit

VOICE OF THE EXPERIENCED, A MEMBERSHIP ORGANIZATION ON BEHALF OF
ITSELF AND ITS MEMBERS; MYRON SMITH, INDIVIDUALLY AND ON BEHALF OF
ALL OTHERS SIMILARLY SITUATED; DAMARIS JACKSON, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; NATE WALKER,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED;
DARRIUS WILLIAMS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED; KEVIAS HICKS; JOSEPH GUILLORY; ALVIN WILLIAMS,
*Plaintiffs-Appellees*

v.

JAMES M. LEBLANC, SECRETARY, DEPARTMENT OF PUBLIC SAFETY AND
CORRECTIONS; TIM HOOPER, WARDEN, LOUISIANA STATE PENITENTIARY;
LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS,
*Defendants-Appellants*

———————————————

On Appeal from the United States District Court
for the Middle District of Louisiana
No. 23-cv-1304, Hon. Brian A. Jackson

———————————————

**APPELLANTS' REPLY BRIEF**

———————————————

*(Counsel listed on inside cover)*

ELIZABETH B. MURRILL
Attorney General of Louisiana

J. BENJAMIN AGUIÑAGA
Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................ii

INTRODUCTION ................................................................................ 1

ARGUMENT ..................................................................................... 3

I.   Plaintiffs' Misrepresentations Require Correction. ............... 3

II.  The Court Should Reverse the May 23 Injunction. .................... 7

    A.   The May 23 Injunction Violates the PLRA. ............................ 7

    B.   If the Court Reaches the Merits, the May 23
        Injunction Order Fails to Properly Apply the Eighth
        Amendment. ........................................................................ 15

    C.   The Equities Cut in the State's Favor. ................................. 22

III. The PLRA Does Not Mandate Micro-Management of
    State Prisons. ....................................................................... 23

CONCLUSION .................................................................................. 24

CERTIFICATE OF SERVICE .................................................................. 25

CERTIFICATE OF COMPLIANCE ........................................................... 26

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Armstrong v. Schwarzenegger,*
  622 F.3d 1058 (9th Cir. 2010).......................................................... 13, 14

*Ball v. LeBlanc,*
  792 F.3d 584 (5th Cir. 2015)................................................................... 8

*Cadena v. El Paso Cnty.,*
  946 F.3d 717 (5th Cir. 2020)................................................................. 17

*Edmo v. Corizon, Inc.,*
  935 F.3d 757 (9th Cir. 2019)........................................................... 13, 14

*Gates v. Cook,*
  376 F.3d 323 (5th Cir. 2004)..................................................... 11, 12, 13

*Hare v. City of Corinth,*
  74 F.3d 633 (5th Cir.1996)................................................................... 18

*Hoffer v. Sec'y, Fla. Dep't of Corr.,*
  973 F.3d 1263 (11th Cir. 2020)....................................................... 13, 15

*Marlowe v. LeBlanc,*
  810 F. App'x 302 (5th Cir. 2020) ......................................................... 22

*Miller v. French,*
  530 U.S. 327 (2000) .............................................................................. 24

*Oluwa v. Gomez,*
  133 F.3d 1237 (9th Cir. 1998).............................................................. 13

*United States v. Hinds Cnty. Bd. of Supervisors,*
  128 F.4th 616 (5th Cir. 2025) ...................................................... *passim*

*United States v. Sec'y, Fla. Dep't of Corr.,*
778 F.3d 1223 (11th Cir. 2015) ........................................................ 13

*Valentine v. Collier,*
956 F.3d 797 (5th Cir. 2020) ....................................................... 17, 23

*Valentine v. Collier,*
978 F.3d 154 (5th Cir. 2020) ....................................................... 23, 24

*Valentine v. Collier,*
993 F.3d 270 (5th Cir. 2021) .............................................................. 17

*Victory v. Berks County,*
789 F. App'x 328 (3d Cir. 2019) ...................................................... 14

*Woodford v. Ngo,*
548 U.S. 81 (2006) .............................................................................. 22

## Statutes

18 U.S.C. § 3626 ................................................................... *passim*

## INTRODUCTION

With all respect, this is not a 70-page-response-brief case. That is so because Plaintiffs now do not dispute three core problems requiring reversal of the May 23 injunction order.

*First*, the district court—in entering the May 23 injunction—nowhere acknowledged or tried to make "need-narrowness-intrusiveness findings" required under the Prison Litigation Reform Act (PLRA). *United States v. Hinds Cnty. Bd. of Supervisors*, 128 F.4th 616, 636 (5th Cir. 2025). In *Hinds County*, this Court reversed a district court's order that asserted those findings "in a conclusory manner and failed to give the necessary explanation and justification to support [them]." *Id.* at 639. This is an *a fortiori* case because the district court here did not even do that. And that is all the Court needs to say to dispose of the case.

*Second*, if the Court reaches the merits, Plaintiffs acknowledge that the district court's analysis of the Heat Index monitoring issue rests on the supposed unconstitutionality of a two-hour policy that does not exist at LSP. There is no dispute about that fact—and thus, this, too, is a straightforward basis for reversal.

*Third*, Plaintiffs also effectively concede that, in deeming unconstitutional Louisiana State Penitentiary's (LSP) Heat Alert threshold of 91 degrees Fahrenheit, the district court did not consider that threshold's interrelationship with the surrounding remedial measures that were contemporaneously implemented. That is plain legal error because, as Plaintiffs agree (Resp.28, 60), a district court must evaluate the "reasonable[ness]" of a particular remedial measure within the "much broader" context of ongoing remedial measures. The district court did not do so, instead gerrymandering the Heat Alert threshold out of that broader context and asking whether that threshold in isolation demonstrates deliberate indifference.

Plaintiffs' response brief frames the May 23 injunction order as *good* micro-management consistent with the PLRA. Respectfully, that is entirely upside down. Running a State's prison down to the minute is not judicial modesty or consistent with Congress's stated goals of circumscribing courts' equitable discretion in the prison context. The Court should summarily reverse the May 23 injunction order.

# ARGUMENT

## I. PLAINTIFFS' MISREPRESENTATIONS REQUIRE CORRECTION.

Before turning to the merits, it is important to begin by correcting a number of repeated misrepresentations in Plaintiffs' response brief.

*First*, Plaintiffs repeatedly refer to the May 23 injunction order as a "temporary restraining order" and "TRO." *E.g.*, Resp.4. While it is technically true that the district court styled the May 23 order as a TRO, ROA.10193, 10230, the district court has since clarified that its May 23 order is a straight preliminary injunction and thus neither a TRO nor subject to TRO rules, *see* Dist. Ct. ECF 269. Indeed, Plaintiffs now concede this point—and that is why they have withdrawn any challenge to this Court's appellate jurisdiction. Resp.22–23 & n.8. It is thus incorrect to characterize the May 23 preliminary injunction as a "TRO."

*Second*, Plaintiffs repeatedly recycle the district court's statement that—absent the calling of a Heat Alert—prisoners on the Farm Line do not "receive regularly scheduled breaks where they can access water and ice." Resp.8–9; *see id.* at 34 ("providing water, ice, and breaks at regular intervals" is not "mandatory until a Heat Alert is called"); *id.* at 50–51 ("[U]nless and until a Heat Alert has been called, Appellants are ... not

required to provide scheduled breaks, water, or ice."). Respectfully, that is seriously misleading.

As Plaintiffs do not dispute (Resp.51), while LSP's Directive 13.067 *itself* does not require breaks, water, and ice regardless whether a Heat Alert is called, Defendants' uncontroverted sworn evidence is that *LSP* does provide such measures regardless whether a Heat Alert is called: "LSP has and continues to provide the following measures daily, even outside of heat season and without a heat alert being issued: (1) 15 minute rest periods every 45 minutes; (2) ability to take breaks as needed; (3) access to shade, ice and water, cups for water; (4) access to sunscreen; (5) access to appropriate clothing, gloves and boots." ROA.9386–87. Plaintiffs did not even try to refute that evidence—and the district court cited no evidence suggesting that LSP does not actually do what it has sworn that it is doing.

For that reason, it is deeply misleading for Plaintiffs to claim that LSP does not ordinarily provide breaks, water, and ice to prisoners working on the Farm Line—and to suggest a Heat Alert is necessary to trigger those measures. None of that is true. As the State explained, and as Plaintiffs do not dispute (Resp.51), the only practical consequence of

the district court's May 23 injunction order is to dictate when prisoners with precautionary duty statuses are transported indoors. *See* Op.Br.11–12 (citing ROA.9378). The Court should disregard Plaintiffs' baseless assertions that this case is about whether a prisoner on the Farm Line gets breaks, water, and ice.

*Third*, Plaintiffs repeatedly suggest—quoting an early district court order—that the extensive measures the State has implemented during this litigation "reflect a 'callous disregard for human health and safety' and 'border on bad faith.'" Resp.12 (quoting ROA.3593, 3596) (alteration omitted); *accord id.* at 6, 60. On their face, Plaintiffs' statements imply that the State's remedial measures in effect today are somehow in bad faith and "callous"—and that the district court has so concluded.

That is not true. The "callous disregard" quote comes from the district court's August 2024 order *pre-dating* the actual measures implemented by the State in response to the district court's contemporaneous instructions in the August order. Setting aside the distinct Heat Alert issue discussed below, the district court has never entered an order suggesting that the State acted inadequately or in bad

faith in complying with the district court's August 2024 instructions. To be sure, Plaintiffs have repeatedly urged the district court to find as much. *See* ROA.6337, 7283. But the district court so far has refused to do so for nearly a year. The State thus respectfully, but strenuously, rejects Plaintiffs' claims that the sweeping policy changes and on-the-ground measures the State has implemented during this litigation are somehow callous and in bad faith.

*Finally*, Plaintiffs repeatedly claim that, during this litigation, LSP has "ma[de] [its] policies *far less protective*." Resp.54; *accord id.* at 3, 12, 59, 65. This, too, is misleading. For one thing, prior to this litigation, Farm Line prisoners did not enjoy amenities like shade wagons, shade pavilions, and so on. Op.Br.8–10. By definition, therefore, Plaintiffs cannot claim that these measures are "less protective" than the status quo ante. Similarly, LSP's Directive 13.067 requires a check of the heat index every *hour*—which is *more protective* than the default Department-wide requirement that the heat index be checked every *two* hours. *Id.* at 11. Again, by definition, Plaintiffs cannot claim that amended Directive 13.067 is "less protective" than the status quo ante.

The *sole* basis for Plaintiffs' assertion that LSP has adopted "less protective" policies is that LSP increased its Heat Alert threshold from 88 degrees to 91 degrees Fahrenheit. The parties can dispute the "less protective" characterization as to that amendment (*see infra*)—but the Court should not tolerate Plaintiffs' across-the-board characterization of LSP as adopting "less protective" policies during this litigation.

## II. THE COURT SHOULD REVERSE THE MAY 23 INJUNCTION.

On the merits, this is an easy case. Plaintiffs do not seriously dispute that the district court's May 23 injunction order fails to comply with the PLRA—and that is all the Court needs to say to dispose of this case. But, even if the Court proceeds to the substantive issues, Plaintiffs offer no serious responses to the purely legal errors in the decision below.

### A. The May 23 Injunction Violates the PLRA.

**1.** This is an easy case principally because the PLRA violation in the May 23 injunction order is easy to spot. The PLRA expressly prohibits injunctive relief "unless the court *finds* that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A) (emphasis

added); *accord id.* § 3626(a)(2) ("Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm."); *see* Resp.40 (describing both provisions as "very similar"). Plaintiffs do not dispute that the district court's May 23 injunction order never actually acknowledges this PLRA bar let alone tries to make the required findings. *Cf. Ball v. LeBlanc*, 792 F.3d 584, 598–99 (5th Cir. 2015) (the district court must "mak[e] the necessary findings and weigh[] the adverse impact on the criminal justice system").

So this case is easy, as precedents like *Hinds County* illustrate. There, this Court reaffirmed that "[t]he PLRA's requirement of need-narrowness-intrusiveness findings applies to any prospective relief." 128 F.4th at 625 (citing 18 U.S.C. § 3626(a)(1)(A)). And the district court's failure to comply with that requirement was fatal in *Hinds County*. In particular, the district court ordered a receivership but "summarily concluded that the receiver's duties satisfy the PLRA's need-narrowness-intrusiveness requirements." *Id.* at 639. As this Court criticized, the district court "did not explain this finding in any detail"—it "asserted this

finding in a conclusory manner and failed to give the necessary explanation and justification to support it." *Id.* The Court thus reversed and remanded on that issue, "instruct[ing] the district court" to "conduct[] a need-narrowness-intrusiveness analysis." *Id.*

Just so here—in fact, the facts here are *worse*. The district court in this case did not even *acknowledge* its responsibility to make the § 3626(a) findings, let alone "summarily conclude[]" that the required findings are present. *Id.* Again, Plaintiffs do not dispute this. Cases like *Hinds County* thus squarely require this Court to reverse the May 23 injunction order.

**2.** Plaintiffs have no serious response. *First*, they say that, because the district court has now claimed to have issued the May 23 injunction "under the Court's authority pursuant to 18 U.S.C. § 3626(2),"[1] all is well because the district court has now supplied "the allegedly missing statutory citation." Resp.5 (citing Dist. Ct. ECF 269); *accord id.* at 41.

As an initial matter, there is nothing "alleged" about the district court's refusal even to acknowledge the PLRA's need-narrowness-

---

[1] As Plaintiffs note, Resp.22 n.9, the district court appears to have intended to say "§ 3626(a)(2)," as there is no "§ 3626(2)."

intrusiveness findings requirement in the May 23 order—Plaintiffs do not, and cannot, cite any portion of the order where the district court acknowledged the PLRA's need-narrowness-intrusiveness findings requirement.

But more importantly, as *Hinds County* confirms, a bald reference to "§ 3626" does not somehow carry a district court's burden "to make sufficient need-narrowness-intrusiveness findings." 128 F.4th at 622. There, at least the district court "summarily concluded" that its order "satisf[ied] the PLRA's need-narrowness-intrusiveness requirements"— and even that was insufficient to save the order from reversal. *Id.* at 639. By contrast, the district court here refused to say anything about the required findings. So this is an *a fortiori* case: Lacking any "necessary explanation and justification" as to the need-narrowness-intrusiveness findings, *id.*, the May 23 order must be reversed.

*Second*, Plaintiffs ask this Court to consider *in the first instance* whether the May 23 injunction order satisfies the PLRA's need-narrowness-intrusiveness limitations. Resp.34–40. That request is barred by the PLRA itself, which places on "the court" entering the prospective relief—here, the district court—the burden of "find[ing] that

such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). That is why, for example, this Court in *Hinds County* reversed and remanded "instruct[ing] the district court on remand" to fix its errors. 128 F.4th at 639. All the same here.

*Third*, and in a similar vein, Plaintiffs argue that a footnote in *Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004), "squarely rejects" the notion that "district courts [must] articulate their NNI findings in a particularized fashion or by using certain language." Resp.41 (citing *Gates*, 376 F.3d at 336 n.8). This is misdirection. Footnote 8 in *Gates* rejected the argument that § 3626(a) requires "a court [to] make particularized findings, on a provision-by-provision basis"—as opposed to less-precise findings that more broadly address the entire injunction order. 376 F.3d at 336 n.8. Footnote 8 did *not* consider, or reject, the argument that a court (as here) violates the PLRA by not only never referencing § 3626(a)(1)(A) but also never making any required findings. As *Hinds County* confirms, the PLRA squarely prohibits that approach.

Plaintiffs observe that, in issuing injunctive relief, the district court in *Gates* did not "cit[e] to Section 3626(a) or specifically stat[e] that its ordered relief was necessary, narrowly drawn, or non-intrusive." Resp.41. If Plaintiffs mean to imply that this Court's decision in *Gates* thus held that the PLRA permits injunctive relief that does not even purport to make the PLRA-required findings, Plaintiffs are incorrect. As just discussed, footnote 8 in *Gates* addressed a different argument—whether "particularized findings, on a provision-by-provision basis" (as opposed to less-precise findings) are required. 376 F.3d at 336 n.8. *Gates* did not claim to decide whether the PLRA permits an injunction that does not purport to make *any* PLRA findings in the first place.

Although *Gates* does not control here, the State flags for the Court that footnote 8 is egregiously wrong—and on the wrong side of a square circuit split that actually underscores the district court's error in this case. Specifically, the circuits are split over how precise a district court's need-narrowness-intrusiveness findings must be under the PLRA. On one side, the Eleventh Circuit has long held that "§ 3626(a)(1)(A) '[require[s] particularized findings that each requirement imposed by the preliminary injunction satisfies each of the need-narrowness-

intrusiveness criteria.'" *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1278 (11th Cir. 2020) (quoting *United States v. Sec'y, Fla. Dep't of Corr.*, 778 F.3d 1223, 1228 (11th Cir. 2015)). On the other side, the Ninth Circuit has long rejected the position that the PLRA requires "a provision-by-provision explanation of a district court's findings." *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1070 (9th Cir. 2010); *accord Edmo v. Corizon, Inc.*, 935 F.3d 757, 783 (9th Cir. 2019) (a court "need not 'make such findings on a paragraph by paragraph, or even sentence by sentence, basis'" (quoting *Armstrong*, 622 F.3d at 1070)). Footnote 8 of *Gates* joins the Ninth Circuit's side of that split.

That split is not implicated here because the district court did not purport to make the PLRA-required findings in the first place. But it is notable that even the Ninth Circuit's view—which is most forgiving to a district court—rests on a premise that virtually every court of appeals embraces: The irreducible minimum of § 3626(a)(1) "mean[s] just what it says—before granting prospective injunctive relief, the trial court must make the findings mandated by the PLRA." *Oluwa v. Gomez*, 133 F.3d 1237, 1239 (9th Cir. 1998); *accord Edmo*, 935 F.3d at 783 ("District courts must make need-narrowness-intrusiveness 'findings sufficient to allow a

clear understanding of the ruling[.]'" (quoting *Armstrong*, 622 F.3d at 1070)). "What is important, and what the PLRA requires," the Ninth Circuit has said, "is a finding that the set of reforms being ordered—the 'relief'—corrects the violations of prisoners' rights with the minimal impact possible on defendants' discretion over their policies and procedures." *Edmo*, 935 F.3d at 783.[2]

Of course, no such findings appear in the May 23 injunction order. And thus the outcome here must be precisely the same as the outcome in *Victory v. Berks County*, 789 F. App'x 328 (3d Cir. 2019): "Under either standard [in the circuit split], the District Court failed to make the required findings"—and thus, "the complete absence of any specific findings with respect to the needs-narrowness-intrusiveness criteria" rendered the preliminary injunction "without legal effect." *Id.* at 334.

*Finally*, the tenor of Plaintiffs' response is that there is no good reason to require the district court to carefully step through the need-narrowness-intrusiveness analysis because, in Plaintiffs' view, they

---

[2] Note that Plaintiffs cite *Edmo* (Resp.42) with a parenthetical stating that the Ninth Circuit "affirm[ed] [an] injunction over appellants' argument that the district court did not expressly detail NNI findings." That description carves out the *remainder* of the cited paragraph, which says that, at a minimum, "[d]istrict courts must make need-narrowness-intrusiveness findings"—which did not happen here. *Edmo*, 935 F.3d at 783 (internal quotation marks omitted).

should easily prevail in that analysis. The Eleventh Circuit addressed, and rejected, precisely that "formalism" argument in *Hoffer*: "(1) [] the Act requires what it requires and (2) [] the statute's formalism serves one of its principal (and undisputed) purposes—namely, to require district courts to dot their i's and cross their t's before issuing or maintaining injunctions that interfere with prison administration." 973 F.3d at 1279 n.8. There can be no dispute that the district court failed to dot its i's and cross its t's before entering the May 23 injunction order.

*　　*　　*

The PLRA problem is clear and indisputable—and the Court need only address this issue to expeditiously dispose of this appeal by reversing the May 23 injunction order.

**B.    If the Court Reaches the Merits, the May 23 Injunction Order Fails to Properly Apply the Eighth Amendment.**

Because this case ends on PLRA grounds, only a few merits thoughts warrant mentioning.

**1.** The State's opening brief principally challenged the district court's determination that "checking the heat index every two hours is unconstitutional, and so LSP officials must now check it every 30 minutes." Op.Br.22. The State pointed out "the incoherence in the May

23 Order"—namely, its focus on the supposed unconstitutionality of checking the heat index every *two* hours, while acknowledging that LSP checks the heat index every *hour*, not every *two* hours.

Plaintiffs now acknowledge as much with incoherence of their own. They first say that it is "[n]ot true" that the "one hour monitoring policy in LSP Directive 13.067 evaded scrutiny." Resp.49. But, in the next paragraph, they concede that the only time the district court mentioned LSP's one-hour policy was in a single sentence in the district court's *background* section. Resp.50 (citing ROA.10197). And that is the problem: The district court's *analysis* focuses exclusively on the supposed unconstitutionality of "monitoring the heat index *only every two hours*." ROA.10211 (emphasis added); *accord* ROA.10215 ("only every two hours"); ROA.10226 ("a two-hour period"); ROA.10227 ("within a 2-hour window"). As the State explained, the district court's focus on a two-hour requirement "is a straw man" since, as the district court recognized, LSP requires a check every hour, not every two hours. Op.Br.23–24.

Recognizing their problem, Plaintiffs try to make up for it by proposing a new constitutional challenge to LSP's one-hour requirement. The record, they say, (purportedly) "supports that significant heat index

increases occur within a one-hour period as well," so no harm no foul. Resp.50. That is not how Eighth Amendment analysis works. "Deliberate indifference is an extremely high standard to meet." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 728 (5th Cir. 2020). If the district court had conducted the proper analysis, it would have needed to show that LSP's choice to assess the heat index every hour (rejecting the less-protective two-hour requirement), as opposed to every 30 minutes, effectively reflected "criminal recklessness." *Valentine v. Collier*, 956 F.3d 797, 802 (5th Cir. 2020). That is not a serious proposition.

Plaintiffs also complain (Resp.49) that LSP did not adopt its one-hour requirement *sooner*. But that does not answer their problem—that the district court based its 30-minute-monitoring dictate on the supposed unconstitutionality of a two-hour requirement that (the district court acknowledged) does not exist at LSP. And Plaintiffs' complaint is directly contrary to basic Eighth Amendment analysis, which requires a court to "consider the evidence from the time suit is filed *to the judgment*." *Valentine v. Collier*, 993 F.3d 270, 282 (5th Cir. 2021) (emphasis added).

Finally, apparently recognizing that the district court's analysis is legally flawed, Plaintiffs urge (Resp.60) the Court to uphold it as just

ancillary to the district court's determination that LSP must call Heat Alerts at 88 degrees rather than 91 degrees Fahrenheit. For the reasons expressed below, that separate determination is itself legally wrong—so this argument goes nowhere.

**2.** On that score, the State's opening brief separately challenged the district court's determination that "issuing a Heat Alert at 91 degrees Fahrenheit is unconstitutional, and so LSP officials must now issue a Heat Alert at 88 degrees Fahrenheit." Op.Br.22. The State explained "the district court's fundamental misapprehension about how the Eighth Amendment analysis works in a case like this—where a defendant is actively responding to alleged constitutional problems." *Id.* at 28. "In such cases, the subjective component of the deliberate-indifference inquiry must be 'satisfied [] in respect to the response itself." *Id.* (quoting *Hare v. City of Corinth*, 74 F.3d 633, 649 n.5 (5th Cir.1996)).

Importantly, Plaintiffs now agree on two points integral to that framework. *First*, "the key question is whether [any remedial] measures are reasonable or adequate to eliminate the identified risk of serious harm." Resp.28. *Second*, this question must be answered in light of the "much broader" context surrounding the remedial measures. Resp.60.

That agreement dooms the district court's Heat Alert holding because "the State's amendment of the Heat Alert threshold did not occur in a vacuum—it occurred alongside the construction of shade wagons and pavilions, the revision and expansion of a medications list, the revision and expansion of heat policies themselves, and the imposition of protective measures *regardless of the weather*: (1) 15 minute rest periods every 45 minutes; (2) the ability to take breaks as needed; (3) access to shade, ice, and water, and cups for water; (4) access to sunscreen; and (5) access to appropriate clothing, gloves, and boots. Op.Br.29. The district court, however "gerrymander[ed] the Heat Alert threshold amendment out of that sweeping effort and deem[ed] it unconstitutional." *Id.* That is not a proper Eighth Amendment analysis, since "[t]he district court was [] required to assess the reasonableness of the collective response itself." *Id.*

This makes good sense. Consider a physician who takes away a life-sustaining drug from his patient. In isolation, that act could be deemed unethical and certainly deliberately indifferent. But, if the physician at the same time gave his patient a replacement drug and corresponding rehabilitation plan to better manage the patient's illness, no reasonable

person would call the physician unethical or deliberately indifferent. Just so here: It makes no sense to identify a single sentence in LSP's sweeping policy changes and ask whether it demonstrates deliberate indifference in isolation and without regard to its interrelationship with other policy changes—yet that is what the district court did.

Note that Plaintiffs walk right into this conclusion. They tell this Court to look at "a much broader set of identified systemic deficiencies" to uphold the district court's Heat Alert holding. Resp.60. That is the flip-side of the State's opening argument that the district court likewise was required to look at that context, albeit to conclude that the State's response has been reasonable. The common ground between the parties is that the district court cannot just *ignore* the surrounding context. And that is precisely the problem: The district court did not ask or answer whether LSP's collective response detailed above rendered the corresponding Heat Alert threshold amendment reasonable. That is the core fatal error.

Plaintiffs offer nothing more on this central issue. They complain that they have "separately challenged as inadequate" the surrounding remedial measures that LSP has in place today. Resp.61. But that does

not help them because the district court so far has refused to credit that challenge—and that is the key problem, since the May 23 injunction order does not say a word about the remedial measures implemented alongside the Heat Alert threshold amendment.

Elsewhere, Plaintiffs imply that the State's position is that "the mere presence of remedial measures" means the State "cannot be deliberately indifferent." Resp.62. That, too, is a straw man. As Plaintiffs are aware, the State has raised a purely legal challenge to the district court's refusal to consider the surrounding remedial measures in assessing the constitutionality of the Heat Alert threshold amendment. The error is that the district court did not consider those measures *at all*—not that their mere existence somehow automatically ends the Eighth Amendment analysis. *See* Op.Br.29 ("The district court was instead required to assess the reasonableness of the collective response itself.").

In a similar vein, Plaintiffs desperately want this case to be about the district court's "credibility determinations" (Resp.62) so they can hide behind the general notion that "credibility determinations following live testimony 'can virtually never be clear error'" (Resp.47). This is

misdirection—for, as Plaintiffs separately admit, the State "do[es] not ... challenge [the district court's] credibility determinations." Resp.47. The State very deliberately focused on purely legal errors committed by the district court. And this Court's resolution of those legal errors does not require any evaluation of the district court's overt effort to insulate its order from appellate review by loudly and repeatedly using the word "credibility."

### C.  The Equities Cut in the State's Favor.

Here, as below, Plaintiffs claim to win the harm and public-interest factors in a preliminary-injunction analysis because "[i]t is always in the public interest to prevent impending violations of constitutional rights, and Appellants have no legitimate interest in maintaining the Farm Line in violation of the Constitution." Resp.65. As the State explained (Op.Br.31), that entire argument assumes that the district court's merits analysis survives scrutiny—which is not true.

One final note: Plaintiffs accuse the State of "misleadingly quot[ing] this Court's prior order" in this litigation. Resp.66. To be clear, the complained-of quotes are *direct quotes* from *Woodford v. Ngo*, 548 U.S. 81 (2006), *Marlowe v. LeBlanc*, 810 F. App'x 302 (5th Cir. 2020), and

*Valentine*, 956 F.3d 797. *See* Op.Br.32. Each of those quotes reflect the fact that a State's prison administration implicates one of the most profound interests a State can hold, and thus federal court interference with that administration is easily cognizable injury. This is not controversial.

## III. THE PLRA DOES NOT MANDATE MICRO-MANAGEMENT OF STATE PRISONS.

The State's opening brief expressed frustration at the fact that "we are litigating a district court's attempt to alter prison operations in matters of (3) degrees and (30) minutes." Op.Br.30. Remarkably, Plaintiffs claim that this micro-management demonstrates *compliance* with the PLRA, not a *violation* of the PLRA. Resp.63. That is not a serious position—for it would turn the PLRA on its head by mandating the exact sort of micro-management that the PLRA was designed to prohibit. If a district court is running a State prison down to the minute,[3] that is not

---

[3] Plaintiffs deem it "disingenuous" (Resp.63–64 n.12) for the State to invoke this Court's decisions in the *Valentine* litigation, where the Court criticized the district court for imposing restrictions "down to the half-hour interval," 956 F.3d at 806. It is not the State's fault that Plaintiffs demanded—and the district court here embraced—regulation of LSP down to the half-hour interval, thereby inviting a comparison to *Valentine*. And insofar as Plaintiffs complain about the State's separation citations of *Valentine v. Collier*, 978 F.3d 154 (5th Cir. 2020), the State quoted (Op.Br.30–31) this Court's black-letter descriptions of the proper judicial role in the prison context. Respectfully, it is nowhere close to disingenuous to explain that "the judiciary's 'conscribed role is not to assess whether prison officials could have

23

judicial modesty; that is jumping the "curb[] [on] the equitable discretion of district courts [that] was one of the PLRA's principal objectives." *Miller v. French*, 530 U.S. 327, 339 (2000).

## CONCLUSION

The Court should summarily reverse the May 23 Order.

Respectfully submitted,

Dated:    July 18, 2025

ELIZABETH B. MURRILL
Attorney General of Louisiana

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA
Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

---

done more'—'[n]or is it to micromanage prison operations.'" Op.Br.30 (quoting *Valentine*, 978 F.3d at 158).

**CERTIFICATE OF SERVICE**

I certify that on July 18, 2025, I filed the foregoing brief with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all counsel of record.

/s/ *J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this motion complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7) because it contains 4685 words; and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016 (the same program used to calculate the word count).

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

Dated: July 18, 2025